1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JAMES K. WICKERSHAM,** | **1:05-CV-1114 OWW LJO** |
| **Plaintiff,** | **ORDER GRANTING DEFENDANTS HILARY W. CLARK, CHRISTOPHER W. CLARK, CHARLES K. CLARK, AND HADLEY E. CLARK'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO DISMISS OR STAY THIS ACTION ON ABSTENTION AND OTHER GROUNDS** |
| **v.** | |
| **HILARY W. CLARK, individually; CHRISTOPHER W. CLARK; CHARLES K. CLARK; HADLEY E. CLARK; and EDWARD HUFF, Interim Trustee of the GT Turnbow Trust,** | |
| **Defendants.** | |

## I.   INTRODUCTION

Defendants Hilary W. Clark, Christopher W. Clark, Charles K. Clark, and Hadley E. Clark (collectively, the "Clark Defendants") move to dismiss or stay Plaintiff James K. Wickersham's ("Plaintiff") federal complaint for declaratory relief for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Plaintiff opposes the motion.

Jurisdiction is premised on diversity under Title 28, Section 1332, of the United States Code, as Plaintiff is a Nevada citizen and all Defendants are California citizens.  The amount

1

in controversy exceeds seventy-five thousand dollars, exclusive
of interest and costs.

## II.  PROCEDURAL HISTORY

The complaint was filed on August 30, 2005.  Doc. 1, Compl.
The first amended complaint ("FAC") was filed on August 31, 2005.
Doc. 5, FAC.  Edwin D. Huff (the "Trustee"), interim trustee of
the G. T. Turnbow Trust, answered and counterclaimed on October
10, 2005.  Doc. 12, Huff Ans.  The response to the Trustee's
answer and counterclaim was filed on October 28, 2005.  Doc. 13,
Resp. to Huff Ans.  The Clark Defendants answered and
counterclaimed on October 21, 2005.  Doc. 14, Clark Ans.
Plaintiff moved for summary judgment on October 31, 2005.  Doc.
15, Mot. for Summ. J.  The Clark Defendants responded on November
18, 2005.  Doc. 22, Clark Resp. in Opp. to Mot. for Summ. J.
Plaintiff's answer to the Clark Defendants' counterclaim was
filed on November 18, 2005.  Doc. 23, Ans. to Countercl.

The Clark Defendants moved to dismiss the FAC on January 31,
2006.  Doc. 40, Mot. to Dismiss.  The Clark Defendants' motion in
opposition to summary judgment was filed on January 31, 2006.
Doc. 43, Mot. in Opp. to Summ. J.[1]  Plaintiff's response in
opposition to the Clark Defendants' motion to dismiss the FAC was
filed on February 13, 2006.  Doc. 47, Resp. in Opp.  The Clark
Defendants' reply to Plaintiff's response in opposition to the
motion to dismiss was filed on February 21, 2006.  Doc. 58,
Reply.  The motions were heard on April 17, 2006.

---

[1] Plaintiff's motion for summary judgment is also before the
court.

2

### III.   BACKGROUND

Dr. Grover D. Turnbow died in 1971.  His will created a testamentary trust ("the Trust") which was established pursuant to the decree of final distribution, filed December 11, 1975, by the Alameda County, California, Superior Court ("the Probate Court").  Dr. Turnbow's surviving spouse, Ruth H. Turnbow, was the sole income beneficiary.  Upon her death, the Turnbows' only child, Mildred Turnbow Wickersham, became the Trust's sole income beneficiary.

The Trust provided that on Mrs. Wickersham's death, the Trust continued until the death of her last surviving child.  Mrs. Wickersham died on September 20, 2002.  She was survived by her three adult children, Grover, James, and Hilary, who are now the income beneficiaries of the Trust.  Decl. of Dean A. Morehous in Supp. of Mot. to Dismiss [hereinafter, "Morehous Decl."], Ex. H, 3; Doc. 47, Resp. in Opp., 3.

The Triangle-T Ranch ("the Ranch") was organized in 1960 as a California C-corporation, and operates an agricultural business on twelve thousand acres in Madera, California.  In or about 1985, the Ranch's board of directors and the shareholders unanimously elected Subchapter-S status under Title 26, Section 1362(a), of the United States Code.  Doc. 5, FAC, ¶¶ 14-15.

The Trust's primary assets include a stock, bond, and cash portfolio valued at more than three million dollars, and fifty-seven thousand, eight hundred fifty-nine shares of the Ranch, forty-two percent of the issued and outstanding voting Ranch shares.  Grover T. Wickersham, Plaintiff James K. Wickersham, and Defendant Hilary Wickersham Clark each individually own sixteen

**3**

1  and eight tenths percent of the Ranch shares, as well.   Morehous

2  Decl., Ex. H, 3-4; Doc. 47, Resp. in Opp, 2-3.

3        Dr. Turnbow's will designated the Bank of America as the

4  Trust's sole trustee.   After Dr. Turnbow's death, his son-in-law,

5  James E. Wickersham, became co-trustee with First Interstate

6  Bank.   First Interstate resigned after a disagreement with James

7  E. Wickersham.   William Hobbs, a friend of James E. Wickersham,

8  was then appointed co-trustee.   When James E. Wickersham died in

9  October 2001, Hobbs continued to serve as sole trustee.   On July

10 19, 2004, Mr. Hobbs petitioned the Probate Court, to approve his

11 resignation as trustee.   Defendant Hilary Clark objected to the

12 successor trustee nominated by Grover Wickersham and Plaintiff

13 James K. Wickersham, and the Probate Court on its own motion

14 appointed Edwin Huff, an accountant who practices in Fresno,

15 California, as interim trustee ("the Trustee"), effective

16 September 13, 2004.   Morehous Decl., Ex. H, 5; id., Ex. B, 1.

17       On August 25, 2005, the Probate Court ordered the Trustee to

18 report on his analysis and application of the Uniform Prudent

19 Investor Act to the Trust's ownership of stock in the Ranch.

20 Morehous Decl., Ex. B, 1.   The Trustee recommended that the Ranch

21 be liquidated and its assets sold to achieve diversification of

22 Trust assets.   Id., 15-16.   Grover Wickersham and Plaintiff

23 oppose the Trustee's recommendation.   Id., Ex. H, 6.

24       The Trustee opines:

25       [t]o the extent that diversification is achieved by an

26       asset sale, the best tax treatment will be obtained by

27       liquidating the corporation while it retains Sub-

28       chapter S status.   The Sub-chapter S tax benefits,

**4**

1    pursuant to a plan of liquidation, would avoid
2    approximately twelve million dollars of double tax at
3    the corporate level, forty-two percent of which, of
4    approximately five million dollars, would be imposed on
5    the Trust.

6  Id., Ex. B, 15.  The Probate Court has taken no action on the
7  Trustee's recommendation.

8       Plaintiff seeks to exchange some of his Ranch shares for a
9  limited partnership interest in the Glenbrook Capital Limited
10 Partnership ("Glenbrook").  Doc. 5, FAC, ¶ 22.  Because Glenbrook
11 will not qualify for Sub-chapter S shareholder status,
12 Plaintiff's proposed transfer would destroy the Ranch's Sub-
13 chapter S status.  Id., ¶ 23; Morehous Decl., Ex. B, 4; Morehous
14 Decl., Ex. G (James K. Wickersham Dep.), 255-56.

15      Defendant Hilary Clark intends to sue Plaintiff, Glenbrook,
16 or any person to whom Plaintiff transfers Ranch shares if such
17 transfer results in the de-election of the Ranch's Sub-chapter S
18 status.  Doc. 5, FAC, ¶ 24.  Plaintiff seeks a declaratory
19 judgment that as a Ranch shareholder, he has the unrestricted
20 right to transfer shares to any party, without personal
21 liability, whether or not the transfer would terminate Sub-
22 chapter S status.  Id., ¶ 28.

23                    **IV.   LEGAL STANDARD**

24      Rule 12(b)(1) of the Federal Rules of Civil Procedure
25 governs dismissal of a suit for lack of subject-matter
26 jurisdiction.  "A federal court is presumed to lack jurisdiction
27 in a particular case unless the contrary affirmatively appears."
28 *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003).

**5**

1   "When subject-matter jurisdiction is challenged under Federal
2   Rule of [Civil] Procedure 12(b)(1), the plaintiff has the burden
3   of proving jurisdiction in order to survive the motion." *Tosco*
4   *Corp. v. Communities for a Better Environment*, 236 F.3d 495, 499
5   (9th Cir. 2001).

6       A challenge to jurisdiction under Rule 12(b)(1) "can be
7   either facial, confining the inquiry to allegations in the
8   complaint, or factual, permitting the court to look beyond the
9   complaint." *Savage v. Glendale Union High School*, 343 F.3d 1036,
10  1039-40 n.2 (9th Cir. 2003).  In a factual Rule 12(b)(1)
11  challenge, "the district court is not restricted to the face of
12  the pleadings, but may review any evidence, such as affidavits
13  and testimony, to resolve factual disputes concerning the
14  existence of jurisdiction." *McCarthy v. United States*, 850 F.2d
15  558, 560 (9th Cir. 1988); *see also Safe Air for Everyone v.*
16  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("[i]n resolving a
17  factual attack on jurisdiction, the district court may review
18  evidence beyond the complaint without converting the motion to
19  dismiss into a motion for summary judgment").

20      Once the moving party has raised factual issues by
21  presenting affidavits or other evidence properly brought before
22  the court, the party opposing the motion to dismiss must furnish
23  affidavits or other evidence necessary to satisfy its burden of
24  establishing subject-matter jurisdiction.  *Savage*, 343 F.3d 1039-
25  40 n.2.

26      Where a defendant in its motion to dismiss under Federal
27  Rule of Civil Procedure 12(b)(1) asserts that the allegations in
28  the complaint are insufficient to establish subject matter

**6**

1  jurisdiction as a matter of law (to be distinguished from a claim

2  that the allegations on which jurisdiction depends are not true

3  as a matter of fact), the allegations in plaintiff's complaint

4  are accepted as true.  *Whisnant v. United States*, 400 F.3d 1177,

5  1179 (9th Cir. 2005).

6  **V.   ANALYSIS**

7  A.   Subject-Matter Jurisdiction

8      Plaintiff seeks relief under the Federal Declaratory

9  Judgment Act, 28 U.S.C. §§ 2201-2202 (2004).  Because the

10  Declaratory Judgment Act does not by itself confer federal

11  subject-matter jurisdiction, Plaintiff is required to plead an

12  independent basis for federal jurisdiction.  *Nationwide Mut. Ins.*

13  *Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005).

14  Plaintiff alleges that the parties are of diverse citizenship and

15  that the amount in controversy exceeds seventy-five thousand

16  dollars.  Doc. 5, FAC, ¶¶ 1-4.  *See* 28 U.S.C. § 1332.

17  1.   Nature of Declaratory Relief Action

18      The purpose of a federal declaratory judgment is to give

19  litigants an early opportunity to resolve issues to avoid the

20  threat of impending litigation.  *Biodiversity Legal Foundation v.*

21  *Badgley*, 309 F.3d 1166, 1172 (9th Cir. 2002); *McDougald v.*

22  *Jenson*, 786 F.2d 1465, 1481 (11th Cir. 1986) (objectives of

23  Declaratory Judgment Act include affording one threatened with

24  liability, but otherwise without a satisfactory remedy, an early

25  adjudication of an actual controversy); *United States v. Doherty*,

26  786 F.2d 491, 498-99 (2nd Cir. 1986) (declaratory-judgment

27  procedure "creates a means by which rights and obligations may be

28  adjudicated in cases involving an actual controversy that has not

**7**

1  reached the stage at which either party may seek a coercive

2  remedy") (*quoting* Charles Allen Wright, *The Law of Federal Courts*

3  § 100, at 671 (4th ed. 1983).  Here, the legal issues to be

4  decided are governed by state, not federal, law (alienability of

5  shares in a close Sub-S corporation).

6     Defendants allege that Plaintiff's declaratory-judgment

7  claim falls within the probate exception to federal jurisdiction,

8  which cedes jurisdiction to a state probate court when its

9  requirements are satisfied.  Until May 2006, the Ninth Circuit

10 used a two-part test to determine applicability of the probate

11 exception: (1) whether the matter is purely probate in nature,

12 that is, whether the federal court is being asked directly to

13 probate a will or administer an estate; or (2) probate-

14 relatedness, which determines whether, by exercising jurisdiction

15 over the matter, the federal court will (a) interfere with the

16 probate proceedings, (b) assume general jurisdiction of the

17 probate, or (c) assume control over property in custody of the

18 state court.  If the answer to any of these questions is yes,

19 then the probate exception applies.  *In re Marshall*, 392 F.3d

20 1118, 1133 (9th Cir. 2004) (*citing Moser v. Pollin*, 294 F.3d 335,

21 340 (2nd Cir. 2002)).  The United States Supreme Court reversed

22 the Ninth Circuit in *Marshall v. Marshall*, — U.S. —, 126 S.Ct.

23 1735 (2006).  Holding that the Ninth Circuit had interpreted the

24 probate exception too expansively, the Court stated:

25     [T]he probate exception reserves to state probate

26     courts the probate or annulment of a will and the

27     administration of a decedent's estate; it also

28     precludes federal courts from endeavoring to dispose of

**8**

1    property that is in the custody of a state probate

2    court.  But it does not bar federal courts from

3    adjudicating matters outside those confines and

4    otherwise within federal jurisdiction.

5  *Marshall*, 126 S.Ct. at 1748.  The declaratory relief requested

6  falls outside the probate exception as stated either by the

7  Supreme Court or by the Ninth Circuit.

8  2.   First *Moser* Inquiry: Purely Probate

9        Defendants argue that the first part of the *Moser* test is

10 satisfied, because "granting relief to the Plaintiff in this case

11 will unquestionably cause a change in [the Ranch's] income-tax

12 status," Doc. 40, Mem. in Supp., 13, and that would interfere

13 with the Trustee's discretion regarding diversification of Trust

14 assets and also with the Probate Court's power to review and

15 approve the Trustee's actions, id., 12.

16       The determination Plaintiff seeks would have neither alleged

17 effect.  The event triggering the de-election of the Ranch's Sub-

18 chapter S status is the transfer of Ranch shares to a non-Sub-

19 chapter-S qualified shareholder.  The requested declaratory

20 judgment that Ranch shares are freely transferable would not

21 itself cause any change to the tax status of the Ranch shares.

22 Nor is the tax status of these shares inherently an incident of

23 probate proceedings or the probate administration of the

24 decedent's estate.  14A Fletcher Cyc. Corp., § 6970.198 (Perm.

25 ed).  The judgment sought would declare that Plaintiff has the

26 legal authority to transfer his shares, which are not assets of

27 the probate estate, to a non-qualified buyer, which would defeat

28 the Sub-chapter S election.  Defendants have not shown that the

**9**

1  corporation, Triangle-T Ranch, is before the Probate Court.

2      "As the *Moser* court noted, since few practitioners would be

3  so misdirected as to seek, for example, letters testamentary or

4  letters of administration from a federal judge, the answer to

5  [the first] question is almost always 'No.'"  *Marshall*, 392 F.3d

6  at 1133.  Here, Plaintiff seeks a federal court judgment that he

7  may transfer, without liability, his own shares (not shares in

8  the estate), in a corporation not subject to control of the

9  Probate Court, to Glenbrook with the objected-to adverse tax

10 effect on all the Ranch's corporate shares, forty-two percent of

11 which are owned by the testamentary Trust.  The Trust is under

12 the continuing jurisdiction of the Probate Court.  Doc. 5, FAC,

13 ¶¶ 25-28.  The judgment sought is governed by state corporate

14 securities law and requires no decision whether the will

15 establishing the Trust is valid or should have been admitted to

16 probate; supervising the Trust's administration; or addressing

17 any purely probate matter.  *Marshall*, 392 F.3d at 1133.  There is

18 no facial conflict with the Probate Court's authority over the

19 Trust.  The federal court has not been asked to assume

20 jurisdiction over the probate estate: to exert control over the

21 Trust's Ranch shares, the only property subject to probate even

22 arguably "in the custody" of the Probate Court.  Plaintiff's

23 federal claim for relief is not "purely probate" in character.

24 3.  Second *Moser* Inquiry: Probate-Relatedness

25     Defendants argue the requested relief is probate-related

26 because it would interfere with the probate proceedings and give

27 the federal court control over property in custody of the Probate

28

**10**

1    Court[2]:

2          [A]djudication of [P]laintiff['s] [] complaint would

3          bind and limit the discretion of the Probate Court and

4          the Trustee regarding the appropriate diversification

5          strategy for the Trust.  That is because this [c]ourt's

6          [declaratory judgment] would allow [Plaintiff] to

7          determine [the Ranch's] taxation status unilaterally

8          and thereby control the diversification strategy for

9          the Trust selected by the Probate Court's designated

10          officer[.]

11   Doc. 40, Mem. in Supp., 7.

12   a.    Interfere With Probate Proceedings

13         The declaratory judgment would validate Plaintiff's

14   transfer to Glenbrook of his Ranch shares, without subjecting him

15   to personal liability to all other Ranch shareholders or the

16   Ranch corporation for the adverse tax consequences that will

17   befall the corporation and other shareholders.  This includes the

18   Trustee of the testamentary Trust in his capacity as a Ranch

19   shareholder.  Doc. 5, FAC, ¶¶ 25-28.  Such a judgment would not

20   "allow [Plaintiff] to determine [the Ranch's] taxation status

21   unilaterally."  It will determine transferability of his shares,

22   a matter of state corporate and commercial law, not probate law,

23   as provided for by the articles of incorporation, by-laws, and

24   the alienability of corporate shares of close corporations under

25   the California Corporations and Uniform Commercial Codes.  The

26   _____

27         [2] Defendants do not argue that the federal court is being
     asked to assume general jurisdiction over the probate.  This
28   factor need not be analyzed.

**11**

1  judgment will not per se interfere with the probate proceedings,

2  because the issues of Ranch share transferability and class

3  corporation shareholder fiduciary duties to other shareholders

4  are independent of the probate proceeding and not governed by

5  probate law.  Nor does the probate court have jurisdiction over

6  the corporation or non-probate non-Trust shares, even if the

7  proposed transfer is not in the best economic interests of the

8  probate estate.

9      Defendants argue that if a federal court adjudicates

10  Plaintiff's complaint it will "necessarily supplant the judgment

11  of the Probate Court regarding the Trust diversification

12  strategy" recommended by the Trustee.  Id., 7.  The Probate Court

13  has made no order to effect the Trustee's recommendation.  Even

14  if the share transfer occurs after a declaratory judgment in

15  federal court, the Probate Court retains full discretion to

16  approve the Trustee's diversification strategy in light of the

17  transferability of the Ranch shares.  The requested declaratory

18  judgment is not to change the shares' tax status.  *Arguendo*, even

19  if the requested determination directly changed the tax status of

20  the Trust's Ranch shares, this will not implicate the probate

21  exception.  *See Markham*, 326 U.S. at 494.

22      No action to dissolve the corporation has been filed in

23  state court or the probate proceedings.  Nor do Defendants

24  suggest how the Probate Court could effect a dissolution and

25  liquidate the corporation with only forty-two percent of the

26  Ranch shares owned by the Trustee subject to probate

27  jurisdiction.  The federal judgment will not operate *in rem* or

28  undermine the Probate Court's authority or control over Ranch

**12**

1    shares owned by the Trust.

2    b.    Assume Control of Probate Property

3          Defendants argue that by granting the requested relief "the

4    [c]ourt will invariably assume control" of Trust property, the

5    Ranch shares held by the Trust, which is under the continuing

6    jurisdiction of the Probate Court.  Doc. 40, Mem. in Supp., 7.

7    This too is incorrect.  The declaratory judgment will only decide

8    the legal relations of Plaintiff and Defendants, as Ranch

9    shareholders *inter se*, regarding the legality of the proposed

10   exchange by Plaintiff of his Ranch shares, not the shares held by

11   the Trust.  Defendants do not explain how the Probate Court why

12   the federal court need "control" of Ranch shares to make the

13   legal decisions.

14         "While a federal court may not exercise its jurisdiction to

15   disturb or affect the possession of property in the custody of a

16   state court, it may exercise its jurisdiction to adjudicate

17   rights in such property where the final judgment does not

18   undertake to interfere with the state court's possession save to

19   the extent that the state court is bound by the judgment to

20   recognize the right adjudicated by the federal court."  *Markham*

21   *v. Allen*, 326 U.S. 490, 494 (1946).  The relief sought will

22   determine the transfer status of Plaintiff's Ranch shares, but

23   will not directly operate to interfere with the Trust shares, as

24   they will not be transferred or removed from the Trust by the

25   judgment.  The judgment will not defeat or impair the

26   jurisdiction of the state Probate Court.

27         Defendants argue that to grant the requested relief would be

28   to exercise "control over all the [Ranch] shares," because it

13

1   would alter the disposition of the Trust stock.  Doc. 40, Mem. in

2   Supp., 10.  A declaratory judgment as to the transferability of

3   Ranch shares owned by the parties will not exercise control over

4   or operate directly on the Ranch shares.  It will not order

5   transfer of Ranch shares.  Defendants' argument that the

6   proceedings in the federal court are *in rem* has already been

7   rejected.

8          Defendants' reliance on *Starr v. Rupp*, 421 F.3d 999 (6th

9   Cir. 1970) (a federal *in rem* action) to defeat subject-matter

10  jurisdiction under the *custodia legis* doctrine is misplaced.  *See*

11  Peter Nicolas, *Fighting the Probate Mafia: A Dissection of the*

12  *Probate Exception to Federal Court Jurisdiction*, 74 S. Cal. L.

13  Rev. 1479, 1527 & n.307.  Here, the requested relief would not

14  "empower" Plaintiff to sell his Ranch shares.  He already does or

15  does not have that power under state law.  Although the decree is

16  sought to absolve Plaintiff of personal liability for the

17  proposed transfer, such a decision as to Plaintiff's personal

18  rights is not *in rem*, nor does it operate on any shareholder's

19  Ranch shares.  State law determines whether the contemplated

20  exchange of Plaintiff's Ranch shares will subject him to

21  liability for damages to the other Ranch shareholders and the

22  corporation for loss of Sub-S tax status.

23         Defendants cite *Bortz v. DeGolyer*, 904 F.Supp. 680 (S.D.

24  Ohio 1995), to support their contention that the requested

25  declaratory judgment would interfere with the Trustee as an

26  officer of the Probate Court.  Doc. 40, Mem. in Supp., 12.  In

27  *Bortz*, plaintiff alleged breach of fiduciary duty in federal

28  court against the attorney-in-fact and executor of decedent's

1   will for the executor's alleged maladministration of the estate

2   in a state probate proceeding.  *Bortz*, 904 F.Supp. at 683-84.

3   Citing Sixth Circuit precedent, *Bortz* held:

4        [F]ederal court proceedings on such a claim would

5        amount to interference into the state probate

6        proceeding.  The determination of liability for a

7        breach of duty requires a determination whether the

8        administrator mishandled the estate.  That

9        determination is a question for the Probate Court and

10       not for the federal court to decide.

11  *Bortz*, 904 F.Supp. at 684.

12       Here, there is no issue of the federal court "sitting in

13  judgment of the propriety of a probate court officer's actions."

14  Id.  No one has claimed the Trustee has mishandled the probate

15  estate.  The Trustee proposes to seek dissolution of the

16  corporation and to liquidate its assets to convert the Ranch

17  shares into cash or debt receivables while Sub-chapter S tax

18  status remains intact to minimize the adverse tax consequences.

19  The Trustee is only one of the shareholders who will be affected

20  by Plaintiff's proposed transfer of the Ranch shares.  The

21  federal decree sought will not order the Trustee to do or not to

22  do anything with the Trust's property that is subject to probate-

23  court jurisdiction.

24       Defendants further claim that this litigation is interfering

25  with the Probate Court proceedings by being used as a shield to

26  obstruct the probate administration.  Defendants allege that

27  Plaintiff refused to disclose documents relevant to the Probate

28  Court proceedings on the grounds that they are relevant to the

**15**

1  federal court case.  Id., 8-9 (citing Morehous Decl., Ex. J

2  (1/24/06 Letter from Epstein to Morehous)).  The letter cites two

3  reasons the request for documents was refused: (1) that the

4  documents are not relevant to the Probate Court proceedings, but

5  rather to the federal court proceedings; and (2) that the persons

6  to whom the documents are addressed, Plaintiff and Grover

7  Wickersham, his brother, are not parties to the Probate Court

8  proceedings.  The letter only partially shows that Plaintiff is

9  using the federal court proceedings as a "shield" to avoid

10  providing Defendants with discovery documents pertaining to the

11  proposed transfer of shares to Glenbrook.  As income

12  beneficiaries of the Trust, the Wickersham brothers have an

13  interest in and "are before the Probate Court."  To the extent

14  Plaintiff's share transfer will adversely affect the Trust's

15  Ranch shares, the Probate Court is "interested" in the proposed

16  Ranch share transfer documents.

17      Defendants claim that the federal proceedings are

18  interfering with Probate Court proceedings by spawning satellite

19  litigation in the Probate Court related to the federal case, for

20  the purpose of "attempting to gain a collateral advantage. . . ."

21  Doc. 40, Mem. in Supp., 9.  In *Moser*, the court stated,

22      What is truly significant for purposes of the probate

23      exception's interference prong . . . is the totality

24      with which the [federal] court's judgment will

25      predetermine the result to be reached by the

26      Surrogate's Court in respect of the [proceedings]

27      before it.

28  *Moser*, 294 F.3d at 342.  In *Moser*, a motion was pending in the

1  Surrogate's Court to vacate its previous decree admitting the

2  decedent's will to probate.  The petition alleged that the

3  decedent's will was a forgery and that the defendants engaged in

4  testamentary fraud.  The federal case, based on diversity

5  jurisdiction, alleged fraudulent concealment and constructive

6  fraud in connection with the probate of the will.  *Moser*, 294

7  F.3d at 337, held:

8          Should the federal lawsuit reach final judgment first

9          and Moser successfully litigate all aspects of her case

10         therein, the District Court will have concluded that

11         the defendants committed fraudulent concealment and

12         constructive fraud.  Such a conclusion would be

13         supported by findings of fact that accord with the core

14         allegations contained in the Complaint: that the

15         signature of the decedent on the Will is a forgery;

16         that at least one of the attesting witnesses did not

17         actually witness the Will's execution; that the Will

18         was typed by one of the defendants; that all of the

19         defendants knew of the Will's infirmities prior to its

20         admission to probate in 1994; and that nonetheless the

21         defendants concealed their knowledge from Moser and the

22         Surrogate's Court.

23         By operation of collateral estoppel and *res judicata*,

24         each of these final determinations by the District

25         Court would be binding on the proceeding still pending

26         before the Surrogate's Court.

27  *Moser*, 294 F.3d at 342.  This would reduce the Surrogate Court

28  proceedings to a "rubber-stamping enterprise."  *Moser*, 294 F.3d

**17**

1   at 343.

2          In *Marshall*, the Ninth Circuit reviewed a similar conflict

3   between federal court and state probate court proceedings, ruling

4   that the federal court's interference implicated the probate

5   exception.  *Marshall*, 392 F.3d at 1134-1136.  Before the state

6   court was:

7          the question of what [decedent] had and what he did

8          with it and whether that was proper or improper. . . .

9          Every transaction in connection with his estate plan

10         was before this Court.

11  *Marshall*, 392 F.3d at 1134 (quoting state court judge).  The

12  federal court specifically determined that the trust was forged

13  and was procured by fraud, conflicting directly with the state

14  court's judgment upholding the trust.  This interfered with the

15  probate proceedings.  *Marshall*, 392 F.3d at 1136.

16         Here, the federal relief requested by Plaintiff will decide

17  the transferability of the shares.  That issue has not yet been

18  specifically raised in the Probate Court.  The Probate Court has

19  not ordered the Trustee to do anything with the Trust shares.

20  The Probate Court does not have the corporation before it and

21  cannot under present circumstances order the corporation

22  dissolved.  The federal decision will not conflict with any

23  decision made by the Probate Court.[3]  A declaratory judgment in

24  Plaintiff's favor would permit a transfer of his shares which

25

26         [3] Defendants represented in oral argument that the Probate
27  Trustee will petition the Probate Court for instructions
    regarding transferability of the Ranch shares to prevent harm to
28  the probate estate.

**18**

1   would destroy the Ranch shares' Sub-chapter S status.   The decree

2   would not impair the Probate Court's discretion over whether and

3   how to diversify the Trust's assets; it would only clarify the

4   legal issue of transferability of the Ranch shares, one of the

5   Trust's assets.   There is no interference with the probate

6   proceedings.

7   4.   *In Rem* Proceedings:

8        Defendants suggest the controversy over the Ranch shares is

9   an *in rem* proceeding which is a local matter that must be decided

10  in a state court where the property is before the court, citing

11  *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939).

12       Corporate securities are intangible personal property under

13  California law.   15 Cal.Jur.3d § 118 (*citing Jean v. Jean*, 207

14  Cal. 115 (1929)); 2-10A Ballantine & Sterling [hereinafter, B &

15  S], Cal. Corp. Laws § 200A[2]; 4-22 B & S § 472[2] ("[i]ntangible

16  personal property includes loans, credit card receivables, and

17  securities").   Intangible personal property can be subject to *in*

18  *rem* proceedings.   *See Rothschild v. Erda*, 258 Cal.App.2d 750, 755

19  (1968).   Actions or proceedings *in rem* seek to affect the

20  interests of all persons in certain property; they are local in

21  the sense that the property or *res* must be within the territorial

22  jurisdiction of the state.   2 Witkin, *Jurisdiction* § 108 (4th ed.

23  1996).   Plaintiff's shares need not be within California or

24  before the court to facilitate a judicial decision in this case,

25  nor is there any allegation that Plaintiff's shares are within

26  the territorial jurisdiction of California.

27       Defendants argue that "[r]esolution of the [P]laintiff's

28  complaint will deprive the Probate Court of control" of the Ranch

**19**

1   shares held by the Trust because both the Probate Court's

2   proceedings regarding the Trust property and the proceedings

3   before the federal court are *in rem*.  Doc. 40, Mem. in Supp., 8.

4   *Princess Lida*, 305 U.S. at 466-67, held that where both

5   proceedings are *in rem*, the first court assuming jurisdiction

6   gains jurisdiction over the *res*.  There, the federal action

7   related solely to administration and restoration of the corpus,

8   it was a proceeding *in rem* and had to yield to the pre-existing

9   state court proceedings with respect to the same *res*.

10      Here, the Probate Court has exercised continuing

11  jurisdiction over the Trust corpus, which includes forty-two

12  percent of the Ranch shares, since December 1975.  Morehous

13  Decl., Ex. A (12/11/75 Alameda County Superior Court Decree);

14  id., Ex. H, 3.  Probate Court proceedings are *in rem*.  *In re*

15  *Estate of Ford*, 32 Cal.4th 160, 166 (2004); *Estate of Buckley*,

16  132 Cal.App.3d 434, 443-44 (1982).

17      Plaintiff's federal claim is not *in rem* or *quasi in rem*.

18  The declaration sought is to personally absolve Plaintiff of any

19  damages if he destroys the Ranch's Sub-S tax status by

20  transferring his Ranch securities to Glenbrook, a non-Sub-

21  chapter-S-qualified entity.  Plaintiff's shares are not before

22  the Probate Court.  The relief will operate not on the property,

23  but rather on all shareholders, personally, in defining their

24  transfer rights in the Ranch shares and liability of Plaintiff

25  for adverse tax consequences to the remaining shareholders and

26  the corporation in the future after the exchange of shares.  The

27  ownership of the shares as such is not in issue.

28      Defendants have not yet obtained a decision about the Trust

**20**

1   shares relating to dissolution of the Ranch corporation and

2   liquidation of its assets.  The issue presented addresses

3   Plaintiff's personal liability, if any, to Defendants or the

4   corporation.  It neither seeks nor will it obtain control over

5   the Trustee's shares.  Neither the federal court nor the Probate

6   Court needs to have custody or control of the Ranch shares in

7   order to make this personal liability determination.  The Probate

8   Court's "control" of the testamentary Trust's ownership of Ranch

9   securities will not be disturbed if the declaratory relief

10  Plaintiff seeks is granted.

11       Defendants' threatened suit is not to obtain possession of

12  the the Ranch shares, to cancel, encumber, or otherwise operate

13  on the Ranch shares as property, but rather to stop Plaintiff's

14  transfer of some of his shares to Glenbrook or impose personal

15  liability on him for the resulting money damages to the

16  shareholders and the corporation caused by destroying the Ranch

17  shares' Sub-chapter S tax status.

18       The right to transfer shares in a corporation is ordinarily

19  a personal right of the shareholder.  12 Fletcher Cyc. Corp.,

20  § 5452 (Perm. ed).  Equity acts *in personam*, not *in rem*.  *Hart v.*

21  *Sansom*, 110 U.S. 151, 154-55 (1884); *Miller v. Miller*, 423 F.2d

22  145, 147 (7th Cir. 1970); *Wilhelm v. Consolidated Oil Corp.*, 84

23  F.2d 739, 746 (10th Cir. 1936).  *See United States v. Bank of New*

24  *York & Trust Co.*, 296 U.S. 463, 478 (1936).  In the legal sense,

25  the Trustee is simply another shareholder, who happens to be

26  subject to the Probate Court's jurisdiction over that percent of

27  Ranch shares it owns, because the Trust he serves is

28  testamentary.  The federal case will not cause Plaintiff to

1  obtain control of the Trustee's shares.

2  5.   Change in Character of Ranch Shares

3       The Ninth Circuit has recognized in an unpublished, non-

4  binding, and non-precedential opinion, *Merner v. Merner*, 129

5  Fed.Appx. 342 (9th Cir. 2005), that whether a minority

6  shareholder can unilaterally destroy the Sub-chapter S tax status

7  of all a corporation's shares by transferring shares to an

8  unqualified owner, is an unsettled question of California law.

9  *Merner*, 129 Fed.Appx. at 343.  In *Merner*, the Ninth Circuit

10 predicted how the California Supreme Court would decide the

11 issue.  *Id.*

12      Out-of-circuit published authority, *A. W. Chesterton Co.,*

13 *Inc. v. Chesterton*, 128 F.3d 1 (1st Cir. 1997), precisely

14 addresses the underlying corporate law issues and holds under

15 Massachusetts law that a minority shareholder's unilateral action

16 to transfer shares which defeated a close corporation's Sub-

17 chapter S tax status breached fiduciary duties to both the

18 corporation and the other shareholders.  *Chesterton*, 128 F.3d at

19 6.

20      Defendants argue that the requested declaratory judgment

21 would "irrevocably change[] the legal character of all [Ranch]

22 stock, not just the subset belonging to [P]laintiff."  Doc. 40,

23 Mem. in Supp., 8.  This is inaccurate.  The Ranch's shares will

24 continue to have the legal character state corporate and

25 commercial law ascribe, and although Plaintiff's transfer may

26 change the tax treatment of Ranch shares, the court's judgment

27 will not.  The triggering event for de-election of Sub-chapter S

28 status is Plaintiff's transfer of Ranch stock to a non-Sub-

1   chapter-S-qualified shareholder, Glenbrook.  Plaintiff does not

2   "concede that this would be the effect of a judgment in this

3   case," id. (citing Morehous Decl., Ex. G (255:22-256:4; 257:6-

4   19)).

5        The probate exception to federal subject-matter jurisdiction

6   does not deprive the federal court of jurisdiction over the

7   declaratory relief action.  The federal action is not *in rem*, and

8   the federal court is not required to yield to the prior

9   proceedings in Probate Court.  The federal court has diversity

10  subject-matter jurisdiction under Title 28, Section 1332, of the

11  United States Code.

12  B.   Abstention

13       Defendants argue even if federal jurisdiction exists the

14  court should dismiss or stay the declaratory relief action on

15  either of two grounds: (1) *Colorado River* abstention; or (2)

16  *Brillhart* abstention.

17  1.   *Colorado River* Abstention

18       Defendants urge abstention under *Colorado River Water*

19  *Conservation District v. United States*, 424 U.S. 800 (1976).  In

20  *Wilton v. Seven Falls Company*, 515 U.S. 277 (1995), the Supreme

21  Court ruled that a court's decision to deny declaratory relief is

22  governed, not by *Colorado River*'s "exceptional circumstances"

23  test, but by the discretionary standard of *Brillhart v. Excess*

24  *Ins. Co.*, 316 U.S. 491 (1942).  *Wilton*, 515 U.S. at 282-85.

25       *Arguendo*, if *Colorado River* properly applied to this

26  declaratory-judgment action, there are no "exceptional

27  circumstances."  *Colorado River* abstention applies when there is

28  a contemporaneous exercise of concurrent jurisdiction by state

23

1   and federal courts.  In such cases there may be circumstances in

2   which traditional abstention principles do not apply, yet

3   considerations of wise judicial administration – conservation of

4   judicial resources and comprehensive disposition of litigation –

5   nonetheless justify a decision to stay or dismiss federal

6   proceedings pending resolution of concurrent state court

7   proceedings.  Such circumstances are, however, exceedingly rare.

8   *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028,

9   1032-33 (9th Cir. 2005) (citations and internal quotation marks

10  omitted).

11      The *Colorado River* abstention doctrine is a narrow exception

12  to the virtually unflagging obligation of the federal courts to

13  exercise the jurisdiction given them.  *Colorado River*, 418 F.3d

14  at 1032.  The existence of a substantial doubt as to whether

15  state proceedings will resolve a federal action precludes

16  abstention and the granting of a *Colorado River* stay.  Exact

17  parallelism between the state and federal proceedings is not

18  required; however, any substantial doubt is sufficient to

19  preclude a stay; for when a district court decides to dismiss or

20  stay under *Colorado River,* it concludes that the parallel state-

21  court litigation will be an adequate vehicle for the complete and

22  prompt resolution of the issues between the parties.  If there is

23  any substantial doubt the state case will not resolve all issues,

24  it is a serious abuse of discretion to grant the stay or

25  dismissal at all under *Colorado River*.  *Central Ariz. Water*

26  *Conservation Dist.*, 418 F.3d at 1033.

27      Here, there is no certainty that the Probate Court

28  proceedings will promptly resolve the precise issue presented by

**24**

1   Plaintiff.  Defendants do not claim that the issue of the Ranch
2   shares' transferability is before the Probate Court.  What is
3   before the Probate Court is the Trustee's concern about the
4   economic productivity of the Ranch shares to the Trust and its
5   income beneficiaries, including Plaintiff.  They argue that
6   Plaintiff has "already started to litigate the merits of the
7   Trustee's . . . recommendation that [the Ranch's] Sub-chapter S
8   status be retained as part of the Trust's overall diversification
9   strategy," and that the Trustee has "made extensive filings in
10  the Probate Court for the express purpose of litigating issues
11  going to [the Ranch's] tax status and the disposition of the
12  Trust's [Ranch] stock."  Doc. 58, Reply, 7.  Plaintiff rejoins
13  that the Sub-chapter S issue before the federal court has not
14  been raised in Probate Court proceedings.  Doc. 47, Resp. in
15  Opp., 12-13.  This conflict is resolved by reference to the
16  Trustee's report to the Probate Court, in which the Trustee
17  recommends that Sub-S tax status should be retained by the
18  corporation.  Morehous Decl., Ex. B, 4:4-5:13.  Given the lack of
19  progress in the Probate Court, there is no present likelihood
20  that the Sub-chapter S issue will be promptly resolved in the
21  Probate Court.  *Colorado River* abstention is not warranted.
22  2.   *Brillhart* Abstention
23       The Declaratory Judgment Act confers on federal courts
24  unique and substantial discretion in deciding whether to declare
25  the rights of litigants.  The statute provides that a court "*may*
26  declare the rights and other legal relations of any interested
27  party seeking such declaration," 28 U.S.C. § 2201(a) (emphasis
28  added).  The statute's textual commitment to discretion and the

1   court's broad authority to grant or withhold declaratory relief

2   distinguish the nature of a declaratory relief claim from a

3   federal court's jurisdiction to hear and decide such claim.   The

4   Declaratory Judgment Act is an enabling act which confers

5   discretion on the courts to grant relief rather than an absolute

6   right in the litigant to obtain relief.   The propriety of

7   declaratory relief in a particular case depends upon its

8   suitability under the unique circumstances of the case.   *Wilton*,

9   515 U.S. at 286-87.   "In the declaratory judgment context, the

10  normal principle that federal courts should adjudicate claims

11  within their jurisdiction yields to considerations of

12  practicality and wise judicial administration."   *Wilton*, 515 U.S.

13  at 288.   This jurisprudence confirms the permissive nature of the

14  declaratory judgment remedy, and does not alter a federal court's

15  "virtually unflagging" obligation to exercise its jurisdiction.

16  *Colorado River*, 424 U.S. at 817.

17      *Brillhart* governs declaratory-judgment abstention.   *Wilton*,

18  515 U.S. at 282-85.   The *Brillhart* abstention factors are non-

19  exclusive; a federal district court should: (1) avoid needless

20  determination of state law issues; (2) discourage litigants from

21  filing declaratory actions as a means of forum shopping; and (3)

22  avoid duplicative litigation.   The court must balance concerns of

23  judicial administration, comity, and fairness to the litigants.

24  The Ninth Circuit recognizes additional considerations, such as:

25  whether the declaratory relief action will settle all aspects of

26  the controversy and serve a useful purpose in clarifying the

27  legal relations at issue; whether the declaratory relief action

28  is being sought merely for the purposes of procedural fencing or

**26**

to obtain a *res judicata* advantage; or whether the use of a
declaratory relief action will result in entanglement between the
federal and state court systems.  The court may also consider the
convenience of the parties, and the availability and relative
convenience of other remedies.  *Principal Life Ins. Co. v.
Robinson*, 394 F.3d 665, 672 (9th Cir. 2004).

The Ninth Circuit in *Merner* recognizes that the issues
presented in this case are undecided under California law.  *Huth
v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800 (9th Cir.
2002), holds that a district court does not abuse its discretion
in declining jurisdiction on the grounds of an open question of
state law.  The first factor favors abstention as this case
presents an open question of state corporate law.

The second factor is neutral.  The fact that Plaintiff
prefers a federal forum, while Defendants prefer state court,
does not alone establish that either party is forum-shopping.
*Huth*, 298 F.3d at 804.  That the declaratory judgment action was
filed after the state probate action, which has been pending
since 1975, is not dispositive; *id.*, although a reasonable
inference is that Plaintiff seeks to avoid the California probate
court by not presenting the question to the state court in a
petition to the Probate Court for instructions to the Trustee not
to oppose Plaintiff's share transfer or a state-court
declaratory-relief action to validate the proposed transfer.

The avoidance of duplicative litigation slightly favors
abstention.  Although the issue presented here is not squarely
before the Probate Court, it will be, and closely related issues
are already being litigated there, *i.e.*, diversification of the

1   Trust assets by dissolution of the Ranch and liquidation of its

2   shares, which will leave the Ranch shareholders with cash and

3   debt securities.   The corporate-shares-transfer issue presented

4   here is a part of the larger controversy over whether the Trust

5   should continue to hold Ranch shares as an investment.   This

6   issue is actively being litigated in the Probate Court.   As a

7   practical matter, the declaratory relief sought by Plaintiff will

8   affect the probate proceedings.   The Probate Court has already

9   ordered evaluation of the productivity of Trust assets, and the

10  Trustee has recommended the Ranch be dissolved while Sub-S status

11  remains intact.   Although a declaratory judgment for Plaintiff

12  would not destroy S-status, it would contribute to its

13  destruction upon Plaintiff's transfer of Ranch shares to

14  Glenbrook.   The federal action has potential to affect any

15  Probate Court order to the Trustee to determine how to maximize

16  the estate's productivity.

17       Comity favors abstention.   The California courts should have

18  the opportunity to develop state corporation law; this role

19  should not be unnecessarily usurped by the federal courts.

20  Likewise, although granting relief in the federal case will

21  clarify the Ranch shareholders' personal legal relations *inter*

22  *se*, the ruling would be only a prediction of how the California

23  Supreme Court will decide the issues of the alienability of close

24  corporation shares in a transfer that will destroy Sub-Chapter S

25  tax status and whether a shareholder in a California Sub-S

26  corporation owes a fiduciary duty to the corporation and other

27  shareholders not to do so.   *See Arizonans for Official English v.*

28  *Arizona*, 520 U.S. 43, 76 (1997) (cooperative judicial

**28**

1   federalism).

2       As an unpublished decision, *Merner* is not binding precedent,
3   *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1086
4   (9th Cir. 2005).  Its analysis is brief and did not address many
5   arguments that were made in the First Circuit case that found a
6   fiduciary duty in the transferor shareholder under analogous
7   circumstances.  The California courts should have the opportunity
8   to interpret state law in a way that fully considers corporate
9   shares transferability and whether a fiduciary duty should be
10  imposed on close corporation shareholders in exercising transfer
11  rights in their common shares.  *See A. W. Chesterton Co., Inc. v.*
12  *Chesterton*, 128 F.3d 1 (1st Cir. 1997); *Wolf v. Superior Court*,
13  107 Cal.App.4th 25, 30 (2003) (*citing Meinhard v. Salmon*, 249
14  N.Y. 458, 463 (1928) (Cardozo, C.J.)).

15      Sound judicial administration favors abstention.  As a court
16  of general jurisdiction, *see* 14 Witkin, *Wills and Probate* § 348
17  (10th ed. 2005) (citing Cal. Prob. Code § 7050), the Probate
18  Court can decide the issue presented here as a matter of
19  California corporate securities and commercial law, resolving the
20  views expressed in *Chesterton* and *Merner*, although neither
21  decision is binding in this circuit.  This will facilitate
22  consistent decision-making about the Trust administration of a
23  major asset, the Ranch shares, in a single judicial forum.
24  Requiring Plaintiff to pursue these issues in the Probate Court
25  is not unfair and will achieve ultimate judicial economy.  The
26  *Brillhart* factors justify abstention as a proper exercise of the
27  district court's authority under the Declaratory Judgment Act not
28  to grant relief.  *See Wilton*, 515 U.S. at 286-87.

1

2                          **VI.   CONCLUSION**

3        For the reasons stated above, in the interests of comity and

4   sound judicial administration, Defendants' motion to stay is

5   GRANTED on *Brillhart* abstention grounds.  If the issue is not

6   timely litigated in the state court, any party may apply to

7   modify or vacate the stay.  The parties shall provide a joint

8   report on the status of the state court proceedings every six

9   months and when the state case is concluded.

10

11  **SO ORDERED**

12  **DATED: May 31___, 2006.**

13

14                              **_/s/ OLIVER W. WANGER_____**
                                    **OLIVER W. WANGER**
15                              **United States District Judge**

16

17

18

19

20

21

22

23

24

25

26

27

28